**PRYOR CASHMAN LLP**
Perry M. Amsellem
Seth H. Lieberman
Patrick Sibley
Matthew W. Silverman
7 Times Square
New York, New York  10036
(212) 421-4100
pamsellem@pryorcashman.com
slieberman@pryorcashman.com
psibley@pryorcashman.com
msilverman@pryorcashman.com

1801 Century Park East
Los Angeles, California  90067
(310) 683-6900
Benjamin S. Akley
bakley@pryorcashman.com

*Attorneys for Plaintiffs Invesco Credit Partners Fund, L.P. and*
*Invesco Credit Partners Fund-A, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| Trident Holding Company, LLC, et al.,[1] | Case No. 19-10384 (SHL) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------X

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective tax identification numbers, are as follows: Trident Holding Company, LLC (6396); American Diagnostics Services, Inc. (2771); Community Mobile Diagnostics, LLC (9341); Community Mobile Ultrasound, LLC (3818); Diagnostic Labs Holdings, LLC (8024); FC Pioneer Holding Company, LLC (6683); JLMD Manager, LLC (8470); Kan-Di-Ki LLC (6100); Main Street Clinical Laboratory, Inc. (0907); MDX-MDL Holdings, LLC (2605); MetroStat Clinical Laboratory – Austin, Inc. (4366); MX Holdings, LLC (8869); MX USA, LLC (4885); New Trident Holdcorp, Inc. (4913); Rely Radiology Holdings, LLC (3284); Schryver Medical Sales and Marketing, LLC (9620); Symphony Diagnostic Services No. 1, LLC (8980); Trident Clinical Services Holdings, Inc. (6262); Trident Clinical Services Holdings, LLC (1255); TridentUSA Foot Care Services LLC (3787); TridentUSA Mobile Clinical Services, LLC (0334); TridentUSA Mobile Infusion Services, LLC (5173); U.S. Lab & Radiology, Inc. (4988). The address of the Debtors' corporate headquarters is 930 Ridgebrook Road, 3rd Floor, Sparks, MD 21152.

```
-----------------------------------------------------------------X
```
Invesco Credit Partners Fund, L.P. and Invesco Credit
Partners Fund-A, L.P.,

                                                    Adv. Pro. _____(SHL)

        Plaintiffs,

 - against -

Trident Holding Company, LLC, New Trident
Holdcorp, Inc., Schryver Medical Sales and
Marketing, LLC, Trident Clinical Services
Holdings, Inc., MX USA, LLC, Kan-Di-Ki, LLC,
Trident Clinical Services Holdings, LLC, MX
Holdings, LLC, Diagnostic Labs Holdings, LLC,
Rely Radiology Holdings, LLC, Symphony
Diagnostic Services No. 1, LLC, American
Diagnostics Services, Inc., U.S. Lab & Radiology,
Inc., JLMD Manager, LLC, MDX-MDL Holdings,
LLC, Community Mobile Diagnostics, LLC,
Community Mobile Ultrasound, LLC, TridentUSA
Mobile Clinical Services, LLC, TridentUSA
Mobile Infusion Services, LLC, Main Street
Clinical Laboratory, Inc., TridentUSA Foot Care
Services LLC, Metrostat Clinical Laboratory –
Austin, Inc., FC Pioneer Holding Company, LLC,
David Smith, Mark Parrish, Steven Fishman,
Adam Abramson, Craig Kahler, Simon Bachleda,
Alexander Greene, and Nikhil Chaudhri,

        Defendants.

```
-----------------------------------------------------------------X
```

## <u>ADVERSARY COMPLAINT</u>

1.      Plaintiffs Invesco Credit Partners Fund, L.P. and Invesco Credit Partners Fund-A,

L.P. (collectively, "Invesco"), as lenders ("Existing First Lien Lender") under that First Lien Credit

Agreement dated as of July 31, 2013 (as amended, amended and restated, modified or

supplemented in December 2014 and December 2016, the "Existing First Lien Credit Agreement"),

by and through their undersigned counsel, hereby file, in connection with the above-captioned

jointly administered chapter 11 cases (the "Chapter 11 Cases"), this adversary complaint against

FC Pioneer Holding Company, LLC ("Holdings"), Trident Holding Company, LLC, New Trident Holdcorp, Inc., Schryver Medical Sales and Marketing, LLC, Trident Clinical Services Holdings, Inc., MX USA, LLC, Kan-Di-Ki, LLC, Trident Clinical Services Holdings, LLC, MX Holdings, LLC, Diagnostic Labs Holdings, LLC, Rely Radiology Holdings, LLC, Symphony Diagnostic Services No. 1, LLC, American Diagnostics Services, Inc., U.S. Lab & Radiology, Inc., JLMD Manager, LLC, MDX-MDL Holdings, LLC, Community Mobile Diagnostics, LLC, Community Mobile Ultrasound, LLC, TridentUSA Mobile Clinical Services, LLC, TridentUSA Mobile Infusion Services, LLC, Main Street Clinical Laboratory, Inc., TridentUSA Foot Care Services LLC, and Metrostat Clinical Laboratory – Austin, Inc. (collectively with Holdings, "Trident"), David Smith ("Smith"), Mark Parrish ("Parrish" and, together with Smith, the "Officers"), Steven Fishman, Adam Abramson, Craig Kahler, Simon Bachleda, Alexander Greene, and Nikhil Chaudhri (collectively, the "Managers" and, together with Trident and the Officers, "Defendants"), and allege as follows:

## INTRODUCTION

2.      This action concerns a coercive and fraudulent refinancing deal—the "April 2018 Transaction"—that was concocted and accomplished jointly by Defendants and non-parties SPCP Group, LLC and Silver Point Finance, LLC (collectively, "Silver Point") with the specific purpose of benefitting Defendants and Silver Point to the detriment of Invesco and Trident's other lenders.

3.      Defendants, while developing and proposing the April 2018 Transaction to Invesco, knew that Trident had materially underperformed its March 2018 financial projections. Defendants further knew if they disclosed the truth as required and reflected in the actual financial results for March 2018, that the April 2018 Transaction would not close. Defendants also knew

that if the April 2018 Transaction did not close immediately that Trident, which at the time was already insolvent, would fail.

4.      Therefore, Defendants deliberately designed the April 2018 Transaction to defraud Invesco (and all Existing First Lien Lenders) via material misrepresentations and omissions of material facts upon which Invesco reasonably relied to its detriment.

5.      Specifically, the April 2018 Transaction was proposed and closed by Defendants on a deliberately unreasonable short timeframe, with Defendants' knowing and intentional misrepresentations and omissions of material facts.  Moreover, Defendants structured the April 2018 Transaction in a coercive manner designed to harshly punish those lenders that refused to consent.  That coercion was important not only to ensure that the fraudulent transaction proceeded, but to obtain as many consents from lenders as possible, since any non-consenting holdouts could still threaten Trident's financial viability.

6.      To accomplish their fraud, Defendants withheld Trident's March 2018 actual financial information from Invesco and other consenting lenders (notwithstanding that Trident had provided that material information to Silver Point) and instead gave Invesco and the other consenting lenders a misleading "budget" that offered a much rosier—albeit false—picture of Trident's financial health.

7.      Based on Defendants' coercion and fraud, Invesco was duped into consenting to the April 2018 Transaction, which had the effect of, *inter alia*, subordinating its debt to Silver Point, extending its maturity deadlines and causing significant monetary damages.

8.      Adding insult to injury, despite Defendants' machinations, Trident ended up declaring bankruptcy a mere ten months after (and regardless of) the April 2018 Transaction. However, Invesco, rather than being in a position identical to Silver Point as a creditor in the

Chapter 11 Cases (as it would have been in the absence of the April 2018 Transaction), as a consequence of the April 2018 Transaction occupies a subordinate creditor position and has been financially and materially damaged.

9.        Thus, Defendants' fraud, breach of fiduciary duty and breach of Invesco's trust and confidence has significantly damaged Invesco as set forth herein.

## JURISDICTION

10.        This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

11.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re: Title 11, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  Invesco consents to entry of final orders or judgments by the Court with respect to any non-core claims.

12.        Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Chapter 11 Cases are pending before the Court.

## PARTIES

13.        Invesco is a lender to Trident under the Existing First Lien Credit Agreement, a creditor in the Chapter 11 Cases, and a party to the Priority/First Lien/Second Lien Intercreditor Agreement dated as of April 30, 2018 (the "2018 Intercreditor Agreement").

14.        The Trident entities, with the exception of Holdings, are obligors under the Existing First Lien Credit Agreement, Debtors in the Chapter 11 Cases, and, with the exception of Holdings (the ultimate parent of all the Trident entities), parties to the 2018 Intercreditor Agreement.

15.     Upon information and belief Defendant David Smith was the CFO of Trident at or around the time of the April 2018 Transaction.

16.     Upon information and belief Defendant Mark Parrish was the CEO and a Manager of Trident at or around the time of the April 2018 Transaction.

17.     Upon information and belief Defendants Steven Fishman, Adam Abramson, Craig Kahler, Simon Bachleda, Alexander Greene and Nikhil Chaudhri were Managers of Trident at or around the time of the April 2018 Transaction.

## STATEMENT OF FACTS

**A.      Invesco's Loans to Trident**

18.     Pursuant to the Existing First Lien Credit Agreement, Invesco loaned $17,592,698.87 to Trident as an Existing First Lien Lender.

19.     Invesco had a relationship of confidence and trust with Trident that was critical to Invesco's decision to lend to Trident.

20.     Trident had a fiduciary relation with Invesco and had a fiduciary duty of candor and honesty in its dealings with Invesco.

21.     Among other things, Section 6 of the Existing First Lien Credit Agreement required Trident to make significant, regular, and highly confidential financial disclosures to Invesco and the other Existing First Lien Lenders upon which, given the nature of Trident's relationship with Invesco, Invesco was entitled to reasonably rely.

22.     Thus, Trident was obligated, as a matter of law and by virtue of its position of trust and confidence with respect to Invesco, to fully and accurately disclose all information material to and concerning Invesco's loans.

**B.      Trident's Financial Struggles in 2017-2018**

23.      In the second half of 2017, Trident was facing a dual-factor life-threatening crisis: its financial performance was dismal and a fully-drawn $70 million revolving credit facility (the "RCF") was due to mature at the beginning of 2018.    Moreover, Trident had an impending financial covenant default that would be triggered in Q1 2018.  In addition to the RCF, Trident's debt at the time consisted of $319.3 million of first lien debt (the "Existing First Lien Debt," of which Invesco held approximately $17 million), and $159.3 million of second lien debt.

24.      As a solution to Trident's financial troubles, in December 2017 Trident's agent and outside advisor PJT Partners Inc. ("PJT"), upon information and belief, presented to Defendants a refinancing plan that proposed, among other things, that the RCF be paid off through an additional loan and that the Existing First Lien Debt be restructured into first-out, second-out, and third-out tranches, with the new first-out tranche reserved for the additional lender.

25.      Under PJT's proposal, Trident's Existing First Lien Lenders (such as Invesco) would be required to either: (i) consent to the restructuring/refinancing transaction, thereby receiving a position in the new second-out tranche (subordinate to the additional lender occupying the first-out tranche); or (ii) accept a position in the new third-out tranche (subordinate to both the first-out and second-out tranches).

26.      PJT noted that it was crucial that the refinancing occur before Trident disclosed its first quarter 2018 financials, because those actual financials would reveal Trident's continuing financial decline and make it impossible to accomplish the refinancing.

27.      In breach of its fiduciary duties, Trident did not timely and fully disclose to Invesco PJT's proposal or its intent to refinance/restructure.

C.    **The April 2018 Transaction**

28.    On March 23, 2018, Existing First Lien Lender Silver Point—which up until the April 2018 Transaction was in the same position for lien and payment priority as Invesco and all other Existing First Lien Lenders—signed an agreement with Trident pursuant to which Trident agreed to exclusively negotiate the terms of PJT's proposed restructuring/refinancing transaction with Silver Point through April 30, 2018 (the last day by which Trident believed it needed to close the transaction).

29.    In breach of their fiduciary duties to Invesco, Defendants never disclosed to Invesco Trident's negotiations with Silver Point, or Trident's exclusive arrangement with Silver Point.

30.    On April 2, 2018, Defendants' motivation to consummate a refinancing deal with Silver Point increased even further when Trident was forced to send a "Borrower Default Notice" regarding Trident's failure to deliver (i) consolidated financial statements for 2017, and (ii) a consolidated budget for 2018.  Trident also indicated its intent to cure its defaults within thirty days pursuant to the Existing First Lien Credit Agreement.

31.    Shortly thereafter, Defendants and Silver Point agreed to the terms of what became the April 2018 Transaction: Silver Point would infuse $160 million in additional capital into Trident in exchange for the subordination of all non-Silver Point lenders, including Invesco and all other Existing First Lien Lenders.

32.    However, consent from the holders of, collectively, more than 50% of the Existing First Lien Debt was necessary to amend the existing loan documents and for Trident and Silver Point to accomplish the April 2018 Transaction.

33.    As such, and as initially proposed by PJT, Defendants' deal was specially designed to fraudulently induce and coerce Invesco and the other Existing First Lien Lenders to consent to

the April 2018 Transaction, notwithstanding that they would be consenting to the subordination of their lien and payment priority to Silver Point.

34.    Specifically, Defendants' deal provided that, upon passing the necessary consent threshold and obtaining approval of the April 2018 Transaction, Silver Point (which at the time held roughly $56 million, or approximately 17%, of the Existing First Lien Debt), would be the sole holder of the new first-out tranche (the "First Out Term Loan") which would include Silver Point's new money investment plus a "roll up" of its existing $56 million of Existing First Lien Debt and an additional 175 basis points on Silver Point's interest rate (to raise its interest rate to Libor + 750 bps).

35.    Defendants' deal further provided that all other (*i.e.* non-Silver Point) holders of Existing First Lien Debt that consented to the proposed refinancing would hold debt in the new subordinate second-out tranche (the "Second Out Term Loan") and would share, pro rata, in a $50 million paydown of their debt at par.  The consenting Existing First Lien Lenders also would receive an additional 25 basis points (to raise their interest rate to Libor + 600 bps—150 basis points less than Silver Point as the only holder of the First Out Term Loan).

36.    In addition to being subordinated to Silver Point, the consenting Existing First Lien Lenders would also have the maturity of their debt extended (from 2019 to 2023) and would be subject to a new option by Trident to pay interest on the Second Out Term Loan in-kind (rather than in cash as required under the Existing First Lien Credit Agreement). Those deal conditions clearly benefitted Defendants but were detrimental to Invesco and the Existing First Lien Lenders, which would have to wait much longer for repayment and could be required to accept non-cash in satisfaction of the interest payments they were due.

37.    Finally, Defendants' deal provided that all holders of Existing First Lien Debt that did not consent to the proposed refinancing would become holders of a new third-out tranche (the "Third Out Term Loan").  Holders of the Third Out Term Loan would not share in the paydown or receive any increase to the interest rate on their loans, and also would not be able to sell their loans under any condition (even an event of default, thereby making it virtually impossible for them to exit their investment).

38.    However, because the maturity date of the Third Out Term Loan would not be extended and because Trident's cash interest expense would be maintained for every Third Out Term Loan holder (as opposed to Trident's option to pay interest in-kind to the Second Out Term Loan holders), Defendants had an interest in obtaining as much consent for the April 2018 Transaction as possible.  In other words, the best outcome for Defendants was if every Existing First Lien Debt holder consented to the April 2018 Transaction, even though only a majority consent was required to approve the deal.

39.    Accordingly, in order to obtain 100 percent consent, Defendants' solicitation for the April 2018 Transaction to the Existing First Lien Lenders was intentionally designed to be coercive and effectuate a fraud.

**D.    Defendants' Fraud by Which to Obtain Lenders' Consent for the April 2018 Transaction**

40.    Trident closed its first quarter financials on Friday, April 20, 2018.  The first quarter is critically important for Trident's operations because there is a significant increase in revenue associated with flu season in the United States.

41.    Unfortunately, Defendants well knew that Trident's actual financial performance in the first quarter of 2018 (the "Actual March 2018 Financials") fell dramatically and materially short of Trident's predicted performance for that period (reflected in the "2018 Budget").  Among

other things, operational EBITDA for March was 31.6% lower in the Actual March 2018 Financials than as projected in the 2018 Budget.

42.     The material shortfall between the 2018 Budget and the Actual March 2018 Financials presented Defendants with a serious dilemma: on the one hand, if the Existing First Lien Lenders learned about Trident's material poor financial performance they would withhold their consent to the April 2018 Transaction; on the other hand, Trident was required as a matter of law to disclose to Invesco and the other Existing First Lien Lenders the disparity between the 2018 Budget and the Actual March 2018 Financials.  Trident was also expressly required to disclose such information to Invesco and the Existing First Lien Lenders under the terms of the existing loan documents.

43.     Specifically, the Existing First Lien Credit Agreement required, at Section 6.02(c), that Trident "promptly" disclose to the administrative agent thereunder "copies" of whatever financial reporting it provided to any other holder of debt securities in excess of a "Threshold Amount" of $10 million (such as Silver Point) or to Ares Capital Management ("Ares") as agent under the Second Lien Credit Agreement (which itself required, at Section 6.01(b), that Trident disclose the Actual March 2018 Financials to Ares by end of business on April 20).

44.     Ultimately, Defendants resolved their dilemma in favor of defrauding Invesco and the other Existing First Lien Lenders: Defendants failed and actively refused to disclose facts material to the April 2018 Transaction (*i.e.*, the Actual March 2018 Financials) to Invesco and all Existing First Lien Lenders as required by law and the loan documents, and fraudulently induced their consent.

45.     The morning after the closing of Trident's books, Trident's CFO Smith, at the direction and with the knowledge of Trident's CEO Parrish and the Managers, emailed the Actual

March 2018 Financials to Silver Point and explained the discrepancies from the 2018 Budget.
Defendants' clear intention was to provide full disclosure of its financial status to Silver Point prior
to the consummation of the April 2018 Transaction.

46.    However, Defendants knew that disclosure of the Actual March 2018 Financials to
Invesco and other Existing First Lien Lenders would kill Trident's ability to obtain the consents
necessary to close the April 2018 Transaction.  Defendants also knew that risk would threaten
Trident's very existence.  Indeed, Defendants had been informed by Trident's auditor that it needed
to close the April 2018 Transaction by April 30 or it would receive a negative audit opinion
identifying not just going concern issues, but also operational and accounting issues that would
have constituted immediate incurable events of default under its various credit agreements.

47.    To comply with the Second Lien Credit Agreement, Trident, at the direction and
with the knowledge of the Officers and Managers, emailed the Actual March 2018 Financials to
Ares on Friday, April 20 (the same day that Trident closed its books). The next morning,
however—only four hours prior to emailing Silver Point a lengthy explanation for the shortfall
reflected in the Actual March 2018 Financials—CFO Smith emailed Ares requesting that it
disregard the Actual March 2018 Financials as allegedly "premature" and that it refrain from
sharing them with Invesco and other lenders.

48.    Trident, at the direction and with the knowledge of the Officers and Managers, then
elected to hide the Actual March 2018 Financials from Invesco and other Existing First Lien
Lenders notwithstanding Defendants' duties under law and the Existing First Lien Credit
Agreement.

49.    First, immediately following the disclosure to Ares, Trident (at the direction and
with the knowledge of its Officers and Managers) directed its agent PJT to reach out to Citibank,

the former agent under the First Lien Credit Agreement, to verify that Citibank had not also received the Actual March 2018 Financials and, if it had, to request that it not disclose the Actual March 2018 Financials to Invesco and other Existing First Lien Lenders.

50.     Second, although Citibank requested on April 23, 2018 that Trident comply with section 6.02(c) of the Existing First Lien Credit Agreement and provide it with the same information that Trident had provided to Ares on April 20 and to Silver Point on April 21, Trident, at the direction and with the knowledge of its Officers and Managers, waited three days to respond and then, <u>one day before the closing of the solicitation window</u>, provided Citibank with the <u>2018 Budget</u>, <u>not the Actual March 2018 Financials</u>, thereby intentionally misleading Invesco and other Existing First Lien Lenders with respect to the financial status of Trident.

51.     Invesco was told it had less than three days—from Tuesday, April 24 (the opening of the consent solicitation) until 5:00 p.m. on April 27, 2018—to consent or be cast into the "Third Out Term Loan" category.

52.     One day before the expiration of the deadline, Invesco received the 2018 Budget (but not the Actual March 2018 Financials) which, by misrepresenting and overstating Trident's financial condition, fraudulently induced Invesco into consenting to the April 2018 Transaction.

53.     Defendants' April 2018 Transaction closed with 100% consent from the Existing First Lien Lenders on April 27, 2018; however, all the consents (except Silver Point's) were procured by Trident, at the direction and with the knowledge of its Officers and Managers, through material misrepresentations and omissions of material facts with a specific intent to defraud Invesco (and the Existing First Lien Lenders) while intending to benefit Defendants and Silver Point to the detriment and injury of Invesco and all other Existing First Lien Lenders.

54.     As part of the April 2018 Transaction, on April 30, 2018 Invesco entered into the 2018 Intercreditor Agreement and a fourth amendment to the Existing First Lien Credit Agreement.

**E.      Trident's Bankruptcy**

55.     Notwithstanding Defendants' blatant fraud to obtain additional financing and undermine, delay, and hinder Invesco's right to repayment of its loans, on February 10, 2019— only ten months after orchestrating and consummating the April 2018 Transaction—Trident filed voluntary petitions for bankruptcy relief and commenced the Chapter 11 Cases.

56.     Trident continues to operate its business and manage its properties as debtors-in-possession, and Silver Point—as both a postpetition financier of Trident's operations and the priority prepetition lender—stands to receive virtually all the value that can be recovered from the bankruptcy estate at the conclusion of the Chapter 11 Cases.

57.     Invesco, on the other hand, was defrauded into consenting to the April 2018 Transaction and being subordinated to Silver Point, and thus stands to receive virtually nothing at the conclusion of the Chapter 11 Cases.

58.     Had Defendants not engaged in fraud and breach of fiduciary duty, the April 2018 Transaction would not have been approved to the resulting detriment and injury to Invesco.

**FIRST CAUSE OF ACTION**
**(Fraud Against Defendants)**

59.     Invesco repeats and realleges all of the allegations contained in all of the above paragraphs as if fully set forth herein.

60.     As set forth above, Defendants defrauded Invesco by knowingly making material misrepresentations and omissions of material facts with the intent of wrongfully inducing Invesco's—and the other Existing First Lien Lenders'—reliance thereon so as to obtain their consent to the April 2018 Transaction.  In ignorance of the true facts contained in the Actual March

2018 Financials, Invesco reasonably relied to its detriment on Defendants' material misrepresentations and omission in granting its consent to the April 2018 Transaction.

61.     **Without limiting the foregoing allegations in all the above paragraphs, Defendants' material misrepresentations and omissions of material facts include as follows**:

a.   On April 20, Trident closed its books for March 2018. The Actual March 2018 Financials fell dramatically short of the 2018 Budget—actual operational EBITDA was nearly 32% less than projected.  Historically, March is critically important for Trident's operations.  As such, Trident's revenue shortfall was a red flag that called into question not just the viability of Trident's capital structure, but of Trident's very existence.

b.   Defendants knew that the Actual March 2018 Financials fell far short of the 2018 Budget prior to the closing of the April 2018 Transaction.  Defendants also knew that the Actual March 2018 Financials were material to Invesco, and all Existing First Lien Lenders, who were considering whether to consent to the April 2018 Transaction.  Defendants further knew that the disclosure of the Actual March 2018 Financials to Invesco and the Existing First Lien Lenders could kill Trident's ability to obtain the necessary consents to the April 2018 Transaction, which Defendants needed to close by April 30, 2018.

c.   Defendants knowingly, and with an intent to deceive, concealed the true facts of Trident's financial health—the Actual March 2018 Financials—from Invesco and the other Existing First Lien Lenders, both by failing to disclose the Actual March 2018 Financials as required by law and contract, and by actively instructing Ares and Citibank to not distribute the Actual March 2018 Financials to Invesco and the other Existing First Lien Lenders.

d.   Instead, on the eve of the closing of the consent solicitation window, Defendants knowingly and with wrongful intent provided Invesco and other Existing First Lien Lenders with

the misleading 2018 Budget, instead of the Actual March 2018 Financials, and thereby materially misrepresented Trident's financial health.

e.   If Invesco and the other Existing First Lien Lenders had received the Actual March 2018 Financials from Defendants prior to the closing of the consent solicitation window, they would not have consented to the April 2018 Transaction.

62.   **Without limiting the foregoing allegations in all the above paragraphs, Defendants' duty to disclose the Actual March 2018 Financials includes as follows**:

a.   Defendants knew that the Actual March 2018 Financials fell far short of the 2018 Budget before the close of the April 2018 Transaction.  Specifically, Defendants knew that Trident had closed its books for March on April 20, 2018. The next day, Trident, through Smith and at the direction and knowledge of Trident's CEO Parrish and the Managers, disclosed the Actual March 2018 Financials to Silver Point, with a detailed explanation of the discrepancies from the 2018 Budget.  Further, Defendants knew that, at their own direction, the Actual March 2018 Financials had not been provided to Invesco (or the other Existing First Lien Lenders).

b.   Defendants actively hid the Actual March 2018 Financials from Invesco and the other Existing First Lien Lenders because they knew disclosure of the Actual March 2018 Financials would kill the April 2018 Transaction.

c.   Before the close of the April 2018 Transaction, Defendants had a duty to disclose the Actual March 2018 Financials because they had superior knowledge of the true financial health (or lack thereof) of Trident and knew that Invesco and the other Existing First Lien Lenders had received incorrect information (*i.e.* the 2018 Budget) upon which they would rely *to their detriment*.

d.    Moreover, Trident and Invesco had a relationship of confidence and trust based upon, *inter alia*, the highly confidential financial information shared between them and by and through the terms of Invesco's loans and the covenants in the loan documents.  Defendants were obligated to exercise complete candor, honesty and good faith in their dealings with Invesco, which they violated by knowingly making materially false representations and material omissions of material facts to Invesco and the other Existing First Lien Lenders concerning the April 2018 Transaction, including providing Invesco with the 2018 Budget while withholding the Actual March 2018 Financials.

63.    **Without limiting the foregoing allegations in all the above paragraphs, Defendants' intent to defraud includes as follows:**

a.    Defendants knew that the successful consummation of the April 2018 Transaction before April 30, 2018 was critical to Trident's survival.  Defendants had every incentive to ensure that Trident obtained the requisite consents and close the April 2018 Transaction on time.  Further, the agreement with Silver Point, whereby Trident would benefit from any incremental increase in consent over 50% through an improved maturity profile of the debt and reduction in Trident's cash interest expense, motivated Trident to obtain as many consents as possible from the Existing First Lien Lenders.

b.    However, on April 20, 2018, only ten days before the necessary close of the April 2018 Transaction, Defendants learned that Trident's financial performance in the critical month of March was substantially and materially below projections.  Defendants knew that the Actual March 2018 Financials, showing a nearly 32% gap in operational EBITDA to the 2018 Budget, would be a red flag to Existing First Lien Lenders and would kill the proposed transaction.

c.   On April 20, 2018, Defendants, through Smith, erroneously sent the Actual March 2018 Financials to Ares.  Almost immediately thereafter, Smith attempted to recall the Actual March 2018 Financials and instructed Ares to refrain from disseminating the information to other lenders, falsely claiming it was premature.  A few hours later, Defendants, through Smith, knowingly and intentionally sent the Actual March 2018 Financials to Silver Point. Defendants, by and through their financial advisor PJT, also immediately reached out to Citibank to confirm that it had not received the Actual March 2018 Financials and to request that Citibank refrain from disclosing the Actual March 2018 Financials to any Existing First Lien Lender.

d.   Invesco requested that Defendants provide the Actual March 2018 Financials but Defendants refused.  Instead, one day before the close of the consent solicitation window, Defendants provided Invesco and the other Existing First Lien Lenders with the 2018 Budget, which Defendants knew was materially false.  Defendants intentionally failed to disclose the material facts set forth in the Actual March 2018 Financials.

e.   The Officers had every incentive to see the April 2018 Transaction close so that they could continue as executives of Trident (which was poised to fail immediately in the absence of a successful refinancing transaction), and actively participated in Defendants' deceit of Invesco and the other Existing First Lien Lenders to fraudulently obtain the optimal consent.

f.   Likewise, the Managers had equal incentive the close the April 2018 Transaction and further approved the April 2018 Transaction notwithstanding that it was clearly procured by fraud and detrimental to Invesco and most of Trident's creditors, to the benefit of Defendants and Silver Point.  The Managers, like the Officers and Trident itself, obtained concrete benefits from the fraud, including but not limited to the fraudulent consummation of the April 2018 Transaction and the infusion of $160 million of new capital to allow Trident to continue operations.

64.    **Without limiting the foregoing allegations in all the above paragraphs, Defendants' material misrepresentations and material omissions of material facts were made with the intent that Invesco would reasonably rely thereon, which Invesco did to its injury, as follows**:

a.    Defendants knew that March was a critical month for Trident's financial performance and further knew that a significant shortfall in March EBITDA below expectations would be a material cause for concern for Trident's creditors and would threaten Trident's continued viability.

b.    Defendants knew that Trident's financial performance was falsely reflected in the 2018 Budget as compared to the Actual March 2018 Financials, but nevertheless knowingly and intentionally distributed that misleading information to Invesco and the other Existing First Lien Lenders, instead of disclosing the Actual March 2018 Financials.

c.    Invesco and the other Existing First Lien Lenders reviewed the 2018 Budget and reasonably relied on the materially misleading information therein in making their decision to consent to the April 2018 Transaction.  Invesco and the Existing First Lien Lenders would not have provided their consent to the April 2018 Transaction had Defendants disclosed the true material facts contained in the Actual March 2018 Financials.

65.    Without limiting the foregoing allegations in all the above paragraphs, Invesco was harmed by entering into the April 2018 Transaction as a direct and proximate result of Defendants' intentional and material misrepresentations and omissions of material facts upon which Invesco reasonably relied.  Invesco has been significantly damaged and is entitled to recover compensatory and punitive damages together with all costs, expenses and attorneys' fees in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Aiding and Abetting Fraud Against the Officers and Managers)

66.     Invesco repeats and realleges all of the allegations contained in all of the above paragraphs as if fully set forth herein.

67.     The Officers and Managers are liable for aiding and abetting Defendants' fraud against Invesco.

68.     The Officers and Managers had actual knowledge of Trident's fraudulent scheme to induce Invesco to consent to the April 2018 Transaction by materially misrepresenting the critical facts and omitting material financial data.

69.     Specifically, the Officers and Managers knew that Trident was facing the maturity of the RCF and an impending financial covenant default that would be triggered in Q1 2018. Further, the Officers and Managers attended a presentation in December 2017 by PJT where a refinancing game plan was presented that would force lenders to consent or lose lien and payment priority.  The Officers and Managers also knew that Trident entered into an exclusivity agreement with Silver Point obligating Trident to negotiate a refinancing transaction exclusively with Silver Point.

70.     Most importantly, the Officers and Managers knew on or around April 20, 2018, when Trident closed its March 2018 books, that Trident had materially underperformed its 2018 Budget, that March was a crucial month for Trident's operations, that the Actual March 2018 Financials would be material to lenders considering the April 2018 Transaction, and that Invesco and the other Existing First Lien Lenders would not receive the Actual March 2018 Financials but instead receive the 2018 Budget.

71.     Finally, the Officers and Managers knew that Invesco and the other Existing First Lien Lenders had only a three-day window in which to decide whether to consent to the intentionally fraudulent April 2018 Transaction.

72.     The Officers and Managers also substantially assisted Trident in its scheme to defraud Invesco and the other Existing First Lien Lenders.

73.     The Officers and Managers were the directors, officers, and controllers of Trident at the time of the April 2018 Transaction, and the transaction would not have been possible without their direction, approval, and consent.  The Managers approved the April 2018 Transaction in their capacity as managers, and the Officers (with the Managers' oversight and at their direction) were personally involved in Trident's scheme (including Smith's multiple emails in furtherance of Trident's intentional concealment of the Actual March 2018 Financials).

74.     Indeed, all of the Officers and Managers were actively involved in Trident's omission, since they all had knowledge of Trident's financial status and the true purpose of the April 2018 Transaction.  Nevertheless, the Officers and Managers failed to disclose all facts material to the April 2018 Transaction, including the Actual March 2018 Financials, to Invesco (or the other Existing First Lien Lenders) as they were required to do.  The Officers and Managers approved the April 2018 Transaction despite knowing that: a) it was detrimental to Invesco and the Existing First Lien Lenders, and b) Invesco and the Existing First Lien Lenders' consents were obtained by material misrepresentations and omissions of material facts.

75.     As a direct and proximate result of the Officers' and Managers' aiding and abetting Trident's fraud, Invesco has been significantly damaged and is entitled to recover compensatory and punitive damages together with all costs, expenses and attorneys' fees in an amount to be determined at trial.

21

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Defendants)

76.     Invesco repeats and realleges all of the allegations contained in all of the above paragraphs as if fully set forth herein.

77.     Defendants are liable to Invesco for breach of their fiduciary duties to Invesco.

78.     Invesco had a relationship of confidence and trust with Trident, as evidenced by, *inter alia*, Trident's disclosure of highly confidential financial information necessary to obtain financing from Invesco.  This fiduciary relationship was critical to Invesco's decision to lend to Trident.  Trident, and its Officers and Managers, had a duty of full candor and honesty in their dealings with Invesco.

79.     By reason of the foregoing, Defendants knowingly and willfully breached the trust and confidence placed in them by Invesco concerning the April 2018 Transaction and Defendants breached their duty of candor and honesty which they owed to Invesco.

80.     Among other things, Defendants contemplated and agreed to a refinancing transaction with Silver Point without disclosing that fact to Invesco and which was detrimental to Invesco's interests.   Defendants intentionally withheld information material and crucial to Invesco's decision whether to consent to the April 2018 Transaction (*i.e.* the Actual March 2018 Financials).  Defendants actively misled Invesco into believing that the 2018 Budget accurately reflected Trident's financial performance.  Defendants designed the April 2018 Transaction through a pattern of dishonesty, deceit and lack of candor for the purpose of obtaining Invesco's consent.  Defendants duped Invesco to consent to the April 2018 Transaction notwithstanding the fact that it was detrimental to Invesco's interests.

81.     Defendants' material misrepresentations and omissions were in breach of Defendants' fiduciary duties which they owed to Invesco.

82.     The Officers and Managers, as the controlling persons of Trident and the persons directly overseeing and approving Trident's conduct as set forth above, are directly and/or vicariously liable for Trident's breaches of fiduciary duty.

83.     As a direct and proximate result of Defendants' breaches of fiduciary duties, Invesco has been damaged and is entitled to recover compensatory and punitive damages together with all costs, expenses and attorneys' fees in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Invesco requests that judgment be entered in its favor against Defendants as follows:

(a)     Holding that Defendants fraudulently induced Invesco to enter into the April 2018 Transaction and the Intercreditor Agreement;

(b)     Holding that Defendants defrauded Invesco;

(c)     Holding that the Defendant Officers and Mangers of Trident aided and abetted Trident to fraudulently induce Invesco to enter into the April 2018 Transaction and the Intercreditor Agreement;

(d)     Holding that Defendants breached their fiduciary duties to Invesco;

(e)     Awarding Invesco compensatory and punitive damages for Defendants' misconduct in an amount to be determined at trial;

(f)     Awarding Invesco its costs, attorneys' fees, expenses, and interest; and

(g)     Providing such other and further relief as may be just and appropriate.

Dated:  New York, New York
         July 18, 2019

**PRYOR CASHMAN LLP**

By: _____*/s/ Seth H. Lieberman*_____
    Perry M. Amsellem
    Seth H. Lieberman
    Patrick Sibley
    Matthew W. Silverman
    7 Times Square
    New York, New York  10036
    (212) 421-4100
    pamsellem@pryorcashman.com
    slieberman@pryorcashman.com
    psibley@pryorcashman.com
    msilverman@pryorcashman.com

    1801 Century Park East
    Los Angeles, California  90067
    (310) 683-6900
    Benjamin S. Akley
    bakley@pryorcashman.com

*Attorneys for Plaintiffs Invesco Credit Partners Fund, L.P. and Invesco Credit Partners Fund-A, L.P.*