**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Trident Holding Company, LLC, *et al.*, | Case No. 19-10384 (SHL) |
| Debtors.[1] | (Jointly Administered) |
| Invesco Credit Partners Fund, L.P. and Invesco Credit Partners Fund-A, L.P., | Adversary No. 19-01323 (SHL) |
| Plaintiffs, | |
| v. | |
| Trident Holding Company, LLC, *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MANAGER DEFENDANTS' MOTION TO DISMISS THE AMENDED ADVERSARY COMPLAINT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Trident Holding Company, LLC (6396); American Diagnostics Services, Inc. (2771); Community Mobile Diagnostics, LLC (9341); Community Mobile Ultrasound, LLC (3818); Diagnostic Labs Holdings, LLC (8024); FC Pioneer Holding Company, LLC (6683); JLMD Manager, LLC (8470); Kan-Di-Ki LLC (6100); Main Street Clinical Laboratory, Inc. (0907); MDX-MDL Holdings, LLC (2605); MetroStat Clinical Laboratory – Austin, Inc. (4366); MX Holdings, LLC (8869); MX USA, LLC (4885); New Trident Holdcorp, Inc. (4913); Rely Radiology Holdings, LLC (3284); Schryver Medical Sales and Marketing, LLC (9620); Symphony Diagnostic Services No. 1, LLC (8980); Trident Clinical Services Holdings, Inc. (6262); Trident Clinical Services Holdings, LLC (1255); TridentUSA Foot Care Services LLC (3787); TridentUSA Mobile Clinical Services, LLC (0334); TridentUSA Mobile Infusion Services, LLC (5173); and U.S. Lab & Radiology, Inc. (4988). The address of the Debtors' corporate headquarters is 930 Ridgebrook Road, 3rd Floor, Sparks, MD 21152.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT BACKGROUND ....................................................................................3

LEGAL STANDARD ...............................................................................................6

ARGUMENT ..........................................................................................................7

     I.      Invesco Does Not Adequately Plead Fraud Against The Manager
            Defendants. .......................................................................................... 7

     II.     Invesco Does Not State An Aiding and Abetting Claim Against The
            Manager Defendants. ........................................................................... 12

     III.    Invesco's Direct Claim For Breach Of Fiduciary Duty Contravenes
            Well-Established Law And Common Sense. ....................................... 14

     IV.    Invesco Fails To Adequately Plead A Negligent Misrepresentation
            Claim Against The Manager Defendants. .......................................... 17

     V.     Invesco's Claims Against The Manager Defendants Should Be
            Dismissed With Prejudice. ................................................................. 18

CONCLUSION .....................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*,
    731 F.2d 112 (2d Cir. 1984)..................................................................................11

*Abbatiello v. Monsanto Co.*,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007)..................................................................11

*In re AlphaStar Ins. Grp.*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008) ..........................................................8–10, 19

*In re AMR Corp.*,
    491 B.R. 372 (Bankr. S.D.N.Y. 2013) ...................................................................6

*Atlantic Gypsum Co. v. Lloyds Int'l Corp.*,
    753 F. Supp. 505 (S.D.N.Y. 1990).......................................................................11

*Barron Partners, LP v. LAB123, Inc.*,
    593 F. Supp. 2d 667 (S.D.N.Y. 2009)..................................................................18

*Basile v. Valeant Pharm. Int'l, Inc.*,
    2016 WL 5922716 (C.D. Cal. Aug. 5, 2016).......................................................17

*In re Bayou Hedge Funds Inv. Litig.*,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007)..................................................................13

*In re Chief Exec. Officers Clubs, Inc.*,
    2006 WL 687159 (Bankr. S.D.N.Y. Mar. 8, 2006) .............................................13

*Cohen v. Avanade, Inc.*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012)..................................................................18

*De Sole v. Knoedler Gallery, LLC*,
    139 F. Supp. 3d 618 (S.D.N.Y. 2015)..................................................................13

*Dobroshi v. Bank of Am., N.A.*,
    886 N.Y.S.2d 106 (App. Div. 2009) ....................................................................15

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008)..................................................................10

*Elliott Assocs., L.P. v. Hayes*,
    141 F. Supp. 2d 344 (S.D.N.Y. 2000)............................................................10, 19

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
    1995 WL 77589 (S.D.N.Y. Feb. 27, 1995) ..........................................................17

*First Hill Partners v. BlueCrest Capital Mgmt.*,
    52 F. Supp. 3d 625 (S.D.N.Y. 2014)..................................................................15

*Hampshire Equity Partners II v. Teradyne, Inc.*,
    2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ...................................................11, 19

*Infanti v. Scharpf*,
    570 F. App'x 85 (2d Cir. 2014) ........................................................................15

*In re Jeweled Objects LLC*,
    2012 WL 3638006 (Bankr. S.D.N.Y. Aug. 22, 2012) ...........................................13

*John Swann Holding Corp. v. Simmons*,
    62 F. Supp. 3d 304 (S.D.N.Y. 2014)..................................................................17

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) ...............................................................12, 16–17

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)..............................................................................12

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..........................................................................7, 12

*Liquidation Trust v. Daimler AG (In re Old Carco LLC)*,
    435 B.R. 169 (Bankr. S.D.N.Y. 2010) .............................................................11, 19

*Morin v. Trupin*,
    711 F. Supp. 97 (S.D.N.Y. 1989)......................................................................13

*In re MSR Hotels & Resorts, Inc.*,
    2013 WL 5716897 (Bankr. S.D.N.Y. Oct. 1, 2013) ...............................................3

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)...............................................................................7

*Northern Shipping Funds I, LLC v. Icon Capital Corp.*,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013)...................................................................15

*O'Hearn v. Gormally (In re Gormally)*,
    550 B.R. 27 (Bankr. S.D.N.Y. 2016)....................................................................7

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
    19 N.Y.3d 584 (2012) ......................................................................................15

*Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd.*
    *(In re BH S & B Holdings LLC)*,
    420 B.R. 112 (Bankr. S.D.N.Y. 2009) .................................................................16

*PetEdge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017)....................................................................6–8, 16

*In re PXRE Grp. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009)....................................................................10

*In re Refco Inc. Sec. Litig.*,
    826 F. Supp. 2d 478 (S.D.N.Y. 2011).................................................................7, 16

*In re Residential Capital, LLC*,
    2013 WL 5273128 (Bankr. S.D.N.Y. Sept. 18, 2013).........................................6, 8

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)...............................................................................16–17

*Shetiwy v. Midland Credit Mgmt.*,
    15 F. Supp. 3d 437 (S.D.N.Y. 2014)...................................................................6, 8

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)..............................................................................10, 19

*SPV OSUS Ltd. v. AIA LLC*,
    2016 WL 3039192 (S.D.N.Y. May 26, 2016).......................................................14

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir. 1992)..................................................................................18

*Thornock v. Kinderhill Corp.*,
    1989 WL 40079 (S.D.N.Y. Apr. 14, 1989)..........................................................13

*Trenwick Am. Litig. Trust v. Ernst & Young LLP*,
    906 A.2d 168 (Del. Ch. 2006).........................................................................12, 16

*Turner v. Temptu Inc.*,
    2013 WL 4083234 (S.D.N.Y. Aug. 13, 2013).......................................................18

*Unsecured Creditors Comm. of Debtor STN Enters. v. Noyes (In re STN Enters.)*,
    779 F.2d 901 (2d Cir. 1985)................................................................................14

*Yellow Cab SLS Jet Mgmt. v. Schwartz*,
    2014 WL 2111688 (S.D.N.Y. May 12, 2014)...................................................6–7, 9

## Statutes

Fed. R. Bankr. P. 2004 ............................................................................................3, 18–19

Fed. R. Bankr. P. 7012 .................................................................................................1

Fed. R. Bankr. P. 9017 .................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................3, 6–7, 11

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1

Fed. R. Evid. 201 .....................................................................................................................3, 17

Defendants Steven Fishman, Adam Abramson, Craig Kahler, Simon Bachleda, Alexander Greene, and Nikhil Chaudhri (collectively, the "Manager Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Adversary Complaint (the "Complaint" or "Compl.")[2] pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012.

## PRELIMINARY STATEMENT

Plaintiffs Invesco Credit Partners Fund, L.P. and Invesco Credit Partners Fund-A, L.P. (together, "Invesco" or "Plaintiff") allege that all Defendants committed fraud in connection with an April 2018 refinancing (the "April 2018 Transaction") involving Defendant Trident Holding Company, LLC and its subsidiaries (collectively, "Trident"). Invesco was one of Trident's existing creditors (a "First Lien Lender") at the time. The Complaint contends that, during the April 2018 Transaction's consent solicitation period, Defendants gave Trident's full-year 2018 budget (the "2018 Budget") to Invesco but intentionally withheld Trident's actual March 2018 financial results (the "March 2018 Actuals"), which showed a miss to the March portion of the Budget. Invesco claims that this fraudulently induced it to consent to the April 2018 Transaction.

All of Invesco's claims should be dismissed, including for the reasons stated in the motions to dismiss filed by Trident and the Officer Defendants. This Memorandum focuses on the four claims asserted against the Manager Defendants: (i) fraud; (ii) aiding and abetting fraud; (iii) breach of fiduciary duty; and (iv) negligent misrepresentation.[3] The flaws in these claims are numerous, but largely boil down to (a) an utter lack of factual allegations about the Manager Defendants and (b) legal theories that are meritless with respect to the Manager Defendants.

---

[2] Amended Adversary Complaint (August 12, 2019) [Invesco AP Docket No. 4]. Capitalized terms used but not defined in this Memorandum have the meaning ascribed to them in the Complaint.

[3] *See* Compl. ¶¶ 88–118 (First–Fourth Causes of Action).

The lack of factual allegations about the Manager Defendants, in particular, dooms the Complaint. Although the Complaint repeatedly states that other Defendants took allegedly fraudulent actions "at the direction and with the knowledge of" the Manager Defendants, it fails to marshal a single fact to support those conclusory allegations. The Complaint does not allege with particularity *what* the Manager Defendants did or did not do (if anything) in connection with any alleged withholding of the March 2018 Actuals from Invesco, or *how* or *when* the Manager Defendants knew (if they did) about any such alleged fraud. The Complaint does not even allege any specific interactions among the Manager Defendants and Invesco, or any specific communications about Invesco that involved the Manager Defendants. Instead, the Complaint relies on unsupported assertions and generic group pleading.

Notably, the one specific factual allegation in the Complaint relating to when the Manager Defendants received the March 2018 Actuals undercuts Invesco's claims. The Complaint alleges that the Manager Defendants received the March 2018 Actuals the afternoon of April 27, 2018 – *after* Invesco received the 2018 Budget on April 26, 2018, and mere hours before the consent solicitation period for the April 2018 Transaction expired. The Complaint's core theory that all Defendants "knew that Trident had materially underperformed" the 2018 Budget and therefore "intentionally withheld" the March 2018 Actuals from Invesco is thus contradicted by Invesco's own pleading about the Manager Defendants.

The Court should dismiss the claims against the Manager Defendants with prejudice. Earlier this year, Capital Finance Opportunities 1701C, LLC ("Peak Rock") bought claims virtually identical to Invesco's.[4] Prior to the filing of the Peak Rock Complaint, over 170,000

---

[4] *See* Adversary Complaint (May 22, 2019) [Peak Rock AP Docket No. 1], *Capital Finance Opportunities 1701C, LLC v. Trident Holding Co.*, No. 19-1145 (Bankr. S.D.N.Y.) (the "Peak Rock Complaint" or "Peak Rock Compl."). The Peak Rock Complaint brought claims against the same Defendants as Invesco's Complaint, as well as against Silver Point Finance, LLC ("Silver Point"), the lender which financed the April 2018 Transaction.

pages of documents were produced to the First Lien Agent under Federal Rule of Bankruptcy Procedure 2004 and subsequently made available to all First Lien Lenders, including Invesco.[5] Yet, even with the benefit of this prior discovery, as well as of the motion to dismiss briefing from the Peak Rock proceeding, Invesco still has been unable to articulate a fraud claim that can withstand scrutiny under any pleading standard, much less the heightened Rule 9(b) standard. Further, its attempts to repackage its fraud claim as a breach of fiduciary duty or a negligent misrepresentation contravene well-established law, including because the Manager Defendants did not owe any duties to Invesco, a creditor of a subsidiary of the entity on whose Board the Manager Defendants served.

The flaws in Invesco's claims against the Manager Defendants cannot be fixed, and all claims against them should be dismissed with prejudice.

## RELEVANT BACKGROUND

Invesco, Trident, and the Manager Defendants.  Invesco was a lender under the Existing First Lien Credit Agreement. Compl. p. 2 & ¶¶ 16, 21; Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Trident Holding Company, LLC, and Its Debtor Affiliates, p. 16 (May 8, 2019) [Trident BK Docket No. 387] (the "Disclosure Statement" or "DS").[6] Trident and its subsidiaries are borrowers or guarantors under the Existing First Lien Credit Agreement. Compl. p. 3 & ¶¶ 13–14; DS at 14–16.

The Manager Defendants were members of the Board of Managers for Trident's parent company, FC Pioneer Holding Company, LLC, a Delaware limited liability company ("Pioneer

---

[5] *See* Peak Rock Compl. ¶ 3; *see also* Compl. p. 3 (Invesco's allegations are based on "documents of Defendants").

[6] The Court may take judicial notice of the Disclosure Statement. *See* Fed. R. Bankr. P. 9017 & Fed. R. Evid. 201; *In re MSR Hotels & Resorts, Inc.*, 2013 WL 5716897, *1 (Bankr. S.D.N.Y. Oct. 1, 2013); *see also* Order (A) Approving the Adequacy of the Debtors' Disclosure Statement and Notice of the Disclosure Statement Hearing; (B) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Joint Proposed Plan; (C) Approving the Form of Various Ballots and Notices In Connection Therewith; and (D) Scheduling Certain Dates With Respect Thereto (May 8, 2019) [Trident BK Docket No. 384] (approving the Disclosure Statement).

Holding" but referred to in the Complaint as "Holdings"). Compl. p. 3 & ¶¶ 17, 20; DS at 12–14.

Importantly, the Manager Defendants were *not* directors or officers of Trident Holding Company,

LLC or any of its borrower subsidiaries, and Pioneer Holding was *not* a party to the Existing

First Lien Credit Agreement or the April 2018 Transaction. Compl. ¶¶ 16–17; DS at 12–15. This

critical fact is obscured in the Complaint by Invesco's misleading definition of "Trident" (*i.e.*,

Trident Holding Company, LLC and its subsidiaries) to also include its parent Pioneer Holding,

Compl. p. 3, and its similarly misleading allegation that the Manager Defendants "were

Managers of Trident," *id.* ¶ 20. Invesco's sleight of hand cannot change the indisputable truth

about the Manager Defendants' position. *See* DS at 12–14; *see also* Peak Rock Compl. ¶¶ 20–25

(accurately alleging that the Manager Defendants were managers of only Pioneer Holding).

The following chart from the Disclosure Statement shows the corporate structure of

Trident and its debt obligations:



DS at 15 (red notes added).

The April 2018 Transaction. The April 2018 Transaction was a refinancing that sought to stabilize Trident's business, provide it with critically needed liquidity, and remedy Trident's pending financial covenant default through an infusion of $160 million from Silver Point. Compl. ¶¶ 26–43. Trident began negotiating with Silver Point in March 2018, and reached an agreement in April 2018. *Id.* ¶¶ 31–35. After documenting the proposed transaction with Silver Point, Trident solicited and received consent from each of the Existing First Lien Lenders – including Invesco – on April 24–27, 2018. *Id.* ¶¶ 36, 38–42, 62. The Complaint does not allege when Invesco consented to the deal. *See id.* ¶¶ 57–58, 62.

The April 2018 Transaction closed on April 27, 2018, at the end of the solicitation window, and a new intercreditor agreement became effective the next business day (the "Intercreditor Agreement"). *Id.* ¶¶ 62–63. Pioneer Holding (for which the Manager Defendants served as managers) is *not* a party to the Intercreditor Agreement or any other contract with Invesco, and did not play a role in soliciting consent for the April 2018 Transaction. *Id.* ¶ 17.

The March 2018 Actuals. The Complaint alleges that Trident closed its books for March on April 20, 2018. *Id.* ¶ 44. The March 2018 Actuals were allegedly sent by Officer Defendant Smith to some creditors, though not Invesco, on April 21–22, 2018. *Id.* ¶¶ 44–45, 48, 50, 52. Invesco claims that it received the 2018 Budget, but not the March 2018 Actuals, on April 26, 2018. *Id.* ¶¶ 59–60.

The Complaint alleges that the Manager Defendants received the March 2018 Actuals, as well as the 2018 Budget, on the "afternoon" of April 27, 2018, a few hours before the April 2018 Transaction closed. *Id.* ¶¶ 59–62, 90(b).

Invesco states that it ultimately received the March 2018 Actuals on May 15, 2018. *Id.* ¶ 64. The Complaint does not allege that Invesco was surprised upon receiving the information, that it concluded at the time that it had been defrauded, or that it contemporaneously took any action consistent with a belief that it had been defrauded. *See generally id.* Invesco filed this lawsuit fourteen months later, on July 18, 2019, after the nearly identical Peak Rock lawsuit settled. *See generally id.*

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *In re AMR Corp.,* 491 B.R. 372, 375 (Bankr. S.D.N.Y. 2013). Courts employ a "two-pronged approach" when evaluating the sufficiency of a complaint. *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 442 (S.D.N.Y. 2014). First, courts begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, for the "well pleaded factual allegations," courts "assume their veracity" and "determine whether they plausibly give rise to an entitlement for relief." *Id.*; *see also In re Residential Capital, LLC*, 2013 WL 5273128, *4 (Bankr. S.D.N.Y. Sept. 18, 2013).

Where, as here, a complaint sounds in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard and requires the plaintiff to "state with particularity the circumstances constituting fraud." In particular, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Yellow Cab SLS Jet Mgmt. v. Schwartz*, 2014 WL 2111688, *1 (S.D.N.Y. May 12, 2014); *see also PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490–91 (S.D.N.Y. 2017) (plaintiff must allege "the who, what, when, where, and how [of the fraud]: the first paragraph of any newspaper story"). The complaint must

also "allege facts that give rise to a strong inference of fraudulent intent," i.e., "scienter"; a plausible or reasonable inference is not sufficient. *Yellow Cab*, 2014 WL 2111688, *1.

The heightened Rule 9(b) pleading standard applies to all causes of action that sound in fraud (including claims of aiding and abetting, breach of fiduciary duty, and negligent misrepresentation) when, as here, those claims are premised on allegations of fraud. *See, e.g.*, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006) (affirming dismissal of aiding and abetting fraud claim); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 512 n.22 (S.D.N.Y. 2011) (dismissing breach of fiduciary duty claim); *PetEdge*, 234 F. Supp. 3d at 496 (dismissing negligent misrepresentation claim).

## ARGUMENT

The Complaint asserts four claims against the Manager Defendants: (i) fraud, Compl. ¶¶ 88–94; (ii) aiding and abetting fraud, *id.* ¶¶ 95–104; (iii) breach of fiduciary duty, *id.* ¶¶ 105– 12; and (iv) negligent misrepresentation, *id.* ¶¶ 113–18. All claims against the Manager Defendants should be dismissed.

**I.      Invesco Does Not Adequately Plead Fraud Against The Manager Defendants.**

The elements of a direct claim for fraud are well-known: "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *O'Hearn v. Gormally* (*In re Gormally*), 550 B.R. 27, 46 (Bankr. S.D.N.Y. 2016) (cleaned up). The Complaint fails to adequately allege fraud by the Manager Defendants for four related reasons.

*First*, the Complaint is devoid of particularized facts about the Manager Defendants' alleged participation in the claimed fraud, and thus does not satisfy Rule 9(b). *See PetEdge*, 234 F. Supp. 3d at 490–91; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197–98 (2d Cir. 2013). Most notably, the Complaint fails to allege a single fact connecting the

Manager Defendants to any communication with Invesco. *See generally* Compl. The Complaint does not allege whether the Manager Defendants ever knew what information was, or was not, provided to Invesco, let alone when they learned it or what happened after they did. *See id.* It is thus no surprise that the Complaint tacitly concedes that the Manager Defendants were not "personally involved" with any aspect of the perpetration of the purported fraud. *See id.* ¶ 102 (conclusorily alleging that only the Officer Defendants were "personally involved").

Because it cannot plead facts alleging that the Manager Defendants were personally involved in the purported fraud, Invesco resorts to asserting that they "knew" of and "directed" the actions of others. *Id.* ¶¶ 50, 53–55, 62, 91(a). But there are no facts pleaded to support these textbook conclusory allegations, *see id.*, and therefore they are not entitled to a presumption of truth. *See PetEdge*, 234 F. Supp. 3d at 494 (rejecting nearly identical allegations that actions were taken at the "direction" and with the "knowledge and approval" of a "senior officer"); *cf. Shetiwy*, 15 F. Supp. 3d at 442; *Residential Capital*, 2013 WL 5273128, *4. Similarly, the Complaint's generic group pleading – it is rife with blanket references to "Defendants," *e.g.*, Compl. ¶¶ 1–11 – must be disregarded. *E.g.*, *In re AlphaStar Ins. Grp.*, 383 B.R. 231, 257–58 (Bankr. S.D.N.Y. 2008) (complaint must "inform *each defendant* of the nature of his alleged participation in the fraud") (emphasis added). Stripped of its conclusory assertions and generic group pleading, the Complaint alleges no connection whatsoever between the Manager Defendants and the purported fraud.[7]

---

[7] The paucity of Invesco's allegations is particularly acute with respect to Defendant Chaudhri. The Complaint fails to acknowledge that Chaudhri did not join the Pioneer Holding Board until Monday, April 22, 2018, just five days before the close of the April 2018 Transaction and notably after many of the allegations in the Complaint had transpired. *See* Compl. ¶¶ 31–49 (emphasizing events from March 23 to April 20, 2018), ¶¶ 27–29, 98 (describing December 2017 events), ¶¶ 44, 90(a), 91(a) (noting Trident closed its books on April 20, 2018); *cf. AlphaStar*, 383 B.R. at 271 (dismissing claims against certain officer and director defendants because they "were not affiliated with AlphaStar at the time when at least some of the wrongful acts occurred").

*Second*, the only factual allegations in the Complaint relating to the Manager Defendants undermine Invesco's claims against them. Specifically, the Complaint alleges that the Manager Defendants received the March 2018 Actuals the "afternoon" of April 27, 2018 – *the day **after** Invesco claims it was fraudulently given the 2018 Budget without the March 2018 Actuals.* Compl. ¶¶ 59, 61. Thus, according to the Complaint, the Manager Defendants did not know what the March 2018 Actuals stated at the time that information was allegedly withheld from Invesco. And the Complaint does not plead any facts alleging that the Manager Defendants acted to defraud Invesco in the few hours between their receipt of an email containing the March 2018 Actuals sometime in the "afternoon" of April 27, 2018, and the close of the consent solicitation period at the end of that same day. *See generally id.* Invesco's own allegations defeat any colorable claim of fraudulent conduct by the Manager Defendants.

*Third*, the Complaint does not plead any facts supporting the required "strong inference of fraudulent intent" by the Manager Defendants. *See Yellow Cab*, 2014 WL 2111688, *1. Invesco cannot plead scienter on a conscious misbehavior or recklessness theory because, as noted above, the Complaint does not allege facts suggesting personal involvement by any Manager Defendant in the alleged fraud. *See AlphaStar*, 383 B.R. at 259–64.

Invesco therefore must plead scienter under a "motive and opportunity" theory, *see id.*, but cannot do so. The Complaint says that the Manager Defendants had an "incentive" to defraud Invesco because they "obtained concrete benefits" from the "consummation of the April 2018 Transaction and the infusion of $160 million of new capital to allow Trident to continue operations" and to avoid a credit default. Compl. ¶ 92(f). But it is well-established that "the alleged motivation of a corporation to raise money to prevent the negative ramifications of a resultant drop of a credit rating or a stock price – even if such a drop would allegedly threaten

9

the 'survival' of a company – is far too generalized (and generalizable) to allege the proper

'concrete and personal' benefit required by the Second Circuit" to adequately allege scienter. *In

re PXRE Grp. Sec. Litig.*, 600 F. Supp. 2d 510, 532 (S.D.N.Y. 2009); *see also In re Elan Corp.

Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008) ("Any corporation would be motivated to

make a profit, to avoid bankruptcy, or to finance the successful launch of a promising

product . . . . These allegations do not support an inference of scienter.").

      The Complaint also claims that the Manager Directors had a motive to commit fraud so

they could "continue[] their positions with the Company" (ignoring that those positions were

unpaid) and be able to receive standard "indemnification" "protection" under the Company's

governing documents (ignoring that the Manager Defendants already had such protection). *See*

Compl. ¶¶ 56, 67. These allegations, too, are legally insufficient. The Second Circuit has long

held that, to plead scienter, "a plaintiff must do more than merely charge that executives aim to

prolong the benefits of the positions they hold." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124,

1130 (2d Cir. 1994) ("If motive could be pleaded by alleging the defendant's desire for

continued employment, . . . the required showing of motive . . . would be no realistic check on

aspersions of fraud."); *see also Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 359

(S.D.N.Y. 2000) ("[A]n executive's motive of preserving his financial interests and other

benefits of his position are too generalized to support an inference of scienter.") (cleaned up);

*AlphaStar*, 383 B.R. at 259 ("[T]he motive to avoid personal liability is too speculative and

conclusory to support scienter.").

      The Complaint thus offers no cognizable motive for the Manager Defendants to defraud

Invesco. This is not surprising. The Complaint concedes that the March 2018 Actuals were

provided to other creditors who continued to support the April 2018 Transaction, and that

Invesco's consent was not necessary to the Transaction. *See* Compl. ¶¶ 36, 48, 50, 55, 91(a).
Invesco also admits that it got the March 2018 Actuals two weeks later, and does not allege that
it took any action upon receiving them. *Id.* ¶ 64. Invesco's theory of fraudulent intent runs
contrary to logic and economic sense, and therefore fails to meet Rule 9(b)'s heightened pleading
standard. *See, e.g.*, *Liquidation Trust v. Daimler AG* (*In re Old Carco LLC*), 435 B.R. 169, 194,
n.21 (Bankr. S.D.N.Y. 2010) (rejecting allegations of actions against self-interest as "implausible"
and thus insufficient to support fraudulent intent); *Hampshire Equity Partners II v. Teradyne,
Inc.*, 2005 WL 736217, *3 (S.D.N.Y. Mar. 30, 2005) ("As a matter of law, such allegations of
irrational motive cannot support a fraud claim under Rule 9(b)."); *Atlantic Gypsum Co. v. Lloyds
Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990) ("Plaintiffs' view of the facts defies
economic reason, and therefore does not yield a reasonable inference of fraudulent intent.").

*Fourth*, the Complaint does not allege an actionable misrepresentation or omission *by the
Manager Defendants personally*. As addressed above, Invesco does not – and could not – allege
that the Manager Defendants made any representations at all to Invesco, let alone one that was
false or misleading by omission. *See generally* Compl. And it is hornbook law that a pure
omission is only actionable if there is a duty to disclose the information at issue. *See, e.g.*,
*Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 534 (S.D.N.Y. 2007); *see also Aaron Ferer &
Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984). The Complaint does
not allege that the Manager Defendants *individually* had any such duty to disclose. Nor could it.
The Manager Defendants had no personal interactions with Invesco; indeed, the entity for which
they served as managers, Pioneer Holding, itself had no interactions with Invesco. *See generally*
Compl. Rather, Invesco's theory is that Pioneer Holding's subsidiary *Trident* had an obligation
to disclose the March 2018 Actuals. *See id.* ¶ 91. That is not sufficient to establish primary

liability by the individual members of Pioneer Holding's Board. *Cf. Trenwick Am. Litig. Trust v. Ernst & Young LLP*, 906 A.2d 168, 173 (Del. Ch. 2006) ("If the holding company, as controlling stockholder, owed no such duties, it is impossible to fathom how the holding company's directors owed such duties."); *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) (dismissing claims against a corporate official because "every allegation . . . regarding [the corporate official's] duty is either conclusory or entirely derivative of [the company's] duty"). Invesco's fraud claim against the Manager Defendants fails.

## II.    Invesco Does Not State An Aiding and Abetting Claim Against The Manager Defendants.

Invesco's claim that the Manager Defendants aided and abetted fraud is even weaker. The Complaint fails to plead any of the three elements: "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; [or] (3) that the defendant provided substantial assistance to advance the fraud's commission," *Lerner*, 459 F.3d at 292.

Invesco does not adequately allege an underlying fraud, as explained above, as well as in Trident's and the Officer Defendants' motions to dismiss.

Nor does the Complaint adequately allege knowledge of a fraud by any Manager Defendant. Critically, this element requires a showing of *actual* knowledge; recklessness does not suffice (though there was no recklessness here). *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014); *see also Lerner*, 459 F.3d at 292–93. Again, as noted above, Invesco does not offer a single fact supporting an inference that any – let alone all – of the Manager Defendants had actual knowledge of the purported misrepresentations and omissions. Its bare assertions that the Manager Defendants, as a group, "knew" of the fraud, *e.g.*, Compl. ¶¶ 97–100, are insufficient as a matter of law. *See, e.g.*, *Lerner*, 459 F.3d at 293 (dismissing claim of "actual knowledge" for failure "to plead facts with the requisite particularity to support that claim"); *In re Jeweled*

*Objects LLC*, 2012 WL 3638006, *9–10 (Bankr. S.D.N.Y. Aug. 22, 2012) (rejecting "wholly conclusory" allegation of actual knowledge).

The Complaint similarly fails to adequately allege the third element of aiding and abetting. Invesco asserts in conclusory fashion that the Manager Defendants "substantially assisted Trident in its scheme" through their approval of the April 2018 Transaction. Compl. ¶¶ 101–02. But substantial assistance to a fraud requires that a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." *In re Chief Exec. Officers Clubs, Inc.*, 2006 WL 687159, *11 (Bankr. S.D.N.Y. Mar. 8, 2006). No facts in the Complaint suggest that the Manager Defendants took any action whatsoever, much less any affirmative actions regarding the information provided (or not provided) to Invesco. *See generally* Compl. The alleged actions of other Defendants are insufficient to plead an aiding and abetting claim against the Manager Defendants. *See, e.g.*, *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 533–34 (S.D.N.Y. 2007) ("[T]he complaint does not identify a single affirmative act by [particular defendants] that assisted, let alone substantially assisted, [the] primary violations. . . . There is no allegation whatever that [those defendants] had anything to do with any of those allegedly false, fraudulent and unfaithful actions [i.e., sending false Net Asset Valuations to investors]."); *Thornock v. Kinderhill Corp.*, 1989 WL 40079, *2–3 (S.D.N.Y. Apr. 14, 1989) (similar).

Further, even if credited, the Complaint's conclusory allegations of "knowledge," "approval," and "consent" by the Manager Defendants, *e.g.*, Compl. ¶¶ 102–03, are not sufficient to show substantial assistance. *See, e.g.*, *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 658 (S.D.N.Y. 2015) ("Awareness and approval, standing alone, do not constitute substantial assistance."); *Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989) ("[M]ere knowledge and

13

approval of the primary wrongdoing" is not "substantial assistance"); *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, *6 (S.D.N.Y. May 26, 2016) ("Where a defendant owes no direct fiduciary duty to the plaintiff, mere inaction cannot constitute substantial assistance."). The Complaint's lack of any specific allegation of affirmative action by the Manager Defendants is fatal to its aiding and abetting claim.

**III.   Invesco's Direct Claim For Breach Of Fiduciary Duty Contravenes Well-Established Law And Common Sense.**

Invesco's breach of fiduciary duty claim is also fundamentally flawed. It appears superficially similar to the fiduciary duty claim brought by Peak Rock: the Complaint parrots Peak Rock's fraud and aiding-and-abetting allegations, and, just like Peak Rock did, tries to repackage those allegations as a breach of fiduciary duty. However, Peak Rock sought *derivative* standing to sue for a breach of duties purportedly owed by the Manager Defendants *to Pioneer Holding* – a straightforward and traditional theory. *See* Peak Rock Compl. ¶¶ 48–68, 108–15. Invesco, by contrast, does not seek derivative standing, but rather seeks to bring a *direct* claim for breach of duties purportedly owed "*to Invesco*," Compl. ¶ 106 (emphasis added).[8] Invesco claims that it was owed direct fiduciary duties because it had a "relationship of confidence and trust with Trident." *Id.* ¶ 107. Invesco is wrong for three related reasons, in particular.

*First*, the Complaint contains no facts explaining why there was a "relationship of confidence and trust" sufficient to give rise to fiduciary duties. The only fact pleaded about Invesco's relationship with any Defendant is that Invesco loaned $17.6 million to Trident under the Existing First Lien Credit Agreement (to which neither Pioneer Holding nor any of the Manager Defendants were parties), and that Section 6 of that agreement requires that "Trident

---

[8] Thus, Invesco has not sought standing and authority to prosecute derivative claims pursuant to *Unsecured Creditors Comm. of Debtor STN Enters. v. Noyes* (*In re STN Enters.*), 779 F.2d 901 (2d Cir. 1985).

make significant, regular, and highly confidential disclosures" of "financial information" to Invesco. *Id.* ¶¶ 21–25, 91(d), 107.[9] As a threshold matter, these threadbare allegations are insufficient as a matter of law to establish a fiduciary duty. *See, e.g., First Hill Partners v. BlueCrest Capital Mgmt.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014) ("barebones and conclusory allegations" that the parties had "interacted regularly," "worked together directly in the past," and "developed longstanding relationships of trust and confidence" were "clearly insufficient to establish a fiduciary duty"); *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105–06 (S.D.N.Y. 2013) ("[A] conclusory allegation that the parties developed a relationship of trust and confidence apart from their contractual relationship is insufficient to plead a fiduciary relationship.").

More fundamentally, it is hornbook law – as well as common sense – that "[a] debtor and creditor have no special relationship of confidence and trust, and the relationship is generally controlled by contract." *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012); *see also Infanti v. Scharpf*, 570 F. App'x 85, 88 (2d Cir. 2014) ("[A] creditor-debtor relationship does not give rise to fiduciary duties."); *Dobroshi v. Bank of Am., N.A.*, 886 N.Y.S.2d 106, 109 (App. Div. 2009) ("This court has repeatedly held that an arm's length borrower-lender relationship is not of a confidential or fiduciary nature."). Invesco's assertion that its utterly ordinary debtor-creditor relationship with subsidiaries of a holding company somehow gave rise to fiduciary duties by the holding company's individual Board members is unsupported, and unsupportable.

*Second*, Invesco's claim against the Manager Defendants also fails for the related, though independent reason that Invesco does not allege any relationship *with Pioneer Holding*, the entity

---

[9] Tellingly, Invesco does *not* bring a claim for breach of the contract governing its relationship with Trident. *Cf.* Compl. ¶¶ 21–24, 43 & 47–48 (alleging that the contract required the March 2018 Actuals to be provided).

on whose Board the Manager Defendants sat, let alone with the *Manager Defendants personally*. *See* Compl. ¶¶ 22, 23, 25, 91(d), 107. Instead, Invesco resorts to gamesmanship by misleadingly lumping Pioneer Holding together with Trident through the use of a defined term. *See id.* at 3.

Nor could Invesco allege any relationship with Pioneer Holding or the Manager Defendants. Pioneer Holding was Trident's parent company, but was not a borrower, guarantor, or party to the Existing First Lien Credit Agreement. *Id.* ¶¶ 16–17; DS at 12–15.[10] The Complaint does not claim that Invesco ever had a single interaction with Pioneer Holding or anyone associated with it, including any Manager Defendant. *See generally* Compl. And even if Pioneer Holding somehow owed fiduciary duties to Invesco, those duties would not run to the Manager Defendants personally. The law is clear that corporate officials like the Manager Defendants do not have fiduciary duties merely because their company does. *See, e.g.*, *Krys*, 486 F. App'x at 156 ("[E]very allegation … regarding [the corporate official's] duty is either conclusory or entirely derivative of [the company's] duty. . . . Such derivative allegations are legally insufficient to state a claim for breach of fiduciary duty against [the corporate official]."); *PetEdge*, 234 F. Supp. 3d at 498–99 (dismissing breach of fiduciary duty claim against an officer that was not alleged to have "had even a single communication or other contact directly" with the plaintiff); *Refco*, 826 F. Supp. 2d at 512 (holding that it "is not the law" that "any high-ranking corporate official is subject to personal liability for breach of fiduciary duty whenever the corporation breached a fiduciary duty").[11]

---

[10] Invesco's fiduciary duty claim is thus also contrary to well-established law because a parent company like Pioneer Holding does not owe fiduciary duties to a subsidiary like Trident, much less to a subsidiary's *creditors* like Invesco. *See Official Comm. Of Unsecured Creditors v. Bay Harbour Master Ltd.* (*In re BH S & B Holdings LLC*), 420 B.R. 112, 144 (Bankr. S.D.N.Y. 2009) ("[P]arent corporations do not owe wholly-owned subsidiaries fiduciary duties."); *see also Trenwick*, 906 A.2d at 191 ("[A] parent corporation does not owe fiduciary duties to its wholly-owned subsidiaries or their creditors.").

[11] Invesco cannot avoid dismissal with a throwaway reference to vicarious liability in the Complaint, Compl. ¶ 111. *See Sharp Int'l Corp. v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 51 (2d Cir. 2005) ("Since Sharp does not contend that State Street owed Sharp a fiduciary duty, Sharp must allege that State Street committed

*Finally*, the Pioneer Holding LLC Agreement (the "Operating Agreement") expressly disclaims any fiduciary duties by the Manager Defendants to any "Person":

> No Duties. Notwithstanding anything to the contrary set forth in this Agreement or any duty (fiduciary or otherwise) that might otherwise have existed at law or in equity, and to the fullest extent permitted by applicable law, (i) the Board Members in their capacity as members of the Board of Managers shall not be deemed to owe any duty (including fiduciary duties) to any Member or any other Person and (ii) a Board Member shall be entitled to act in its sole and absolute discretion and in the interests of the Member [who] appointed [] it.

Ex. A, Operating Agreement § 7.5; *see also id.* Article I (defining "Person" to include any "legal entity").[12] It would not have been reasonable for Invesco to believe that it had a fiduciary relationship with the Manager Defendants when the Operating Agreement unambiguously disclaimed any such duties. *Cf.* Compl. ¶¶ 8, 72–80 (addressing the diligence materials Invesco received before investing in Trident).

Thus, even on its own terms, the Complaint fails to plead any connection between Invesco and the Manager Defendants that could give rise to fiduciary duty claims against the Manager Defendants. Invesco's attempt to conjure a fiduciary relationship out of thin air is contrary to well-established law and common sense, and should be rejected.

## IV. Invesco Fails To Adequately Plead A Negligent Misrepresentation Claim Against The Manager Defendants.

As with a breach of fiduciary duty claim, a plaintiff "may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the

---

affirmative acts that furthered the Spitzes' breaches of fiduciary duty to Sharp and caused Sharp the $19 million loss."); *Krys*, 486 F. App'x at 156–57 (similar); *cf. Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 1995 WL 77589, *6 (S.D.N.Y. Feb. 27, 1995) ("New York law, however, does not recognize vicarious liability for directors, officers, agents, or shareholders. . . . [A] director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office and he is liable only for torts in which he participated or which he authorized or directed.") (cleaned up).

[12] The Court may take judicial notice of the Operating Agreement because, among other reasons, there can be no reasonable dispute over its contents. *See* Fed. R. Evid. 201; *cf. John Swann Holding Corp. v. Simmons*, 62 F. Supp. 3d 304, 309 (S.D.N.Y. 2014) (taking judicial notice of exculpatory provision in certificate of incorporation on motion to dismiss); *Basile v. Valeant Pharm. Int'l, Inc.*, 2016 WL 5922716, *3 n.3 (C.D. Cal. Aug. 5, 2016) (taking judicial notice of LLC agreement on motion to dismiss).

17

parties." *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009). A special relationship in the context of a negligent misrepresentation claim requires "actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.*; *see also Turner v. Temptu Inc.*, 2013 WL 4083234, *8 (S.D.N.Y. Aug. 13, 2013) ("[A] plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty."); *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992) (affirming dismissal of negligent misrepresentation claim because "[t]he complaint asserts no facts that would establish such a fiduciary duty"); *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 327 (S.D.N.Y. 2012) (finding that alleged relationship between the parties was "not fiduciary in nature and thus d[id] not constitute a 'special relationship' for purposes of a negligent misrepresentations claim").

The Complaint's negligent misrepresentation claim thus fails for the same reasons as the fiduciary duty claim: no factual allegations establish the requisite relationship with Trident, let alone with the Manager Defendants individually.

**V.    Invesco's Claims Against The Manager Defendants Should Be Dismissed With Prejudice.**

Any further amendment of Invesco's claims against the Manager Defendants would be futile. The legal flaws identified above cannot be fixed. Additionally, as more fully set forth in Trident's motion to dismiss, Invesco cannot show damages because its consent was not necessary to the April 2018 Transaction, and thus it would be in the same position in the but-for world as it is now.

Nor is there any prospect that the factual flaws in Invesco's claims can be fixed. Invesco has already had the benefit of extensive Rule 2004 discovery – including the production of more than 170,000 pages of documents – conducted by its representative, the First Lien Agent,

through sophisticated counsel. Invesco has also had the benefit of the motion to dismiss briefing in the Peak Rock proceeding, and has already amended its pleading once.

Under these circumstances, Invesco's claims against the Manager Defendants should be dismissed with prejudice. *See, e.g.*, *AlphaStar*, 383 B.R. 282–83 (dismissal with prejudice where plaintiff "had access to information [through Rule 2004 discovery] not generally available to the typical plaintiff," and because the plaintiff's "theory . . . cannot be cured through repleading"); *Liquidation Trust*, 435 B.R. at 194–95 (similar); *see also Shields*, 25 F.3d at 1132; *Elliott Assocs., L.P.*, 141 F. Supp. 2d at 360; *Hampshire Equity Partners II*, 2005 WL 736217, *5–6.

## CONCLUSION

For the foregoing reasons, Manager Defendants Steven Fishman, Adam Abramson, Craig Kahler, Simon Bachleda, Alexander Greene, and Nikhil Chaudhri request that the Court dismiss all claims against them with prejudice.

Dated: December 16, 2019
       New York, NY

Respectfully submitted,

*/s/ Andrew P. Propps*
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
Andrew P. Propps
apropps@sidley.com

One South Dearborn
Chicago, IL 60603
(312) 853-7000
Bojan Guzina (admitted *pro hac vice*)
John M. Skakun III (admitted *pro hac vice*)
bguzina@sidley.com
jskakun@sidley.com

*Attorneys for Nikhil Chaudhri*

**GOULSTON  & STORRS PC**
885 Third  Avenue, 18th Floor
New York, NY 10022
(212) 878-6900
Charles  R. Jacob III
James F. Wallack (*pro hac vice* pending)
cjacob@goulstonstorrs.com
jwallack@goulstonstorrs.com

*Attorneys for Steven Fishman,*
*Adam Abramson, and Craig Kahler*

**SCHULTE  ROTH & ZABEL  LLP**
919 Third  Avenue
New York, NY 10022
(212) 756-2000
Adam C. Harris
adam.harris@srz.com

901 Fifteenth  Street, NW, Suite  800
Washington,  DC 20005
(202) 729-7476
Peter H. White  (admitted  *pro hac vice*)
Jason T. Mitchell
peter.white@srz.com
jason.mitchell@srz.com

*Attorneys for Alexander Greene*

**WINSTON  & STRAWN LLP**
200 Park Avenue
New York, NY 10166
(212) 294-6700
Carey D. Schreiber
Carrie  V. Hardman
cschreiber@winston.com
chardman@winston.com

*Attorneys for Simon Bachleda*